IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02792-NYW-NRN

SCOTT THOMAS WARRINGTON,

Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY (DHS),
TRANSPORTATION SECURITY ADMINISTRATION (TSA),
ALEJANDRO NICHOLAS MAYORKAS, individually and in his official capacity as
Secretary of the DHS, and
DAVID PETER PEKOSKE, individually and in his official capacity as Administrator of
the TSA,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (ECF No. 37) AND
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 64)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This case is before the Court pursuant to orders issued by Judge Nina Y. Wang, ECF Nos. 38 & 65, referring Defendants Alejandro Mayorkas, David Pekoske, the Department of Homeland Security ("DHS"), and the Transportation Security Administration's ("TSA") Motion to Dismiss ("Motion to Dismiss"), ECF No. 37, and Plaintiff Scott Thomas Warrington's Motion for Summary Judgment ("Motion for Summary Judgment"), ECF No. 64.

Defendants filed the Motion to Dismiss on January 26, 2024. Plaintiff filed a response, ECF No. 54, and Defendants filed a reply, ECF No. 57. Plaintiff filed the

1

Motion for Summary Judgment on April 24, 2024.[1] The Court conducted a telephonic motion hearing on April 30, 2024. ECF No. 69. The Court has taken judicial notice of the Court's file and considered the applicable federal and state statutes and case law. As set forth below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss, ECF No. 37, be **GRANTED**; and Plaintiff's Motion for Summary Judgment, ECF No. 64, be **DENIED**.

I.    **BACKGROUND[2]**

Plaintiff was employed by the TSA as a Transportation Security Officer ("TSO") at the Durango-La Plata County Airport in Durango, Colorado from September 7, 2014 through January 16, 2020. ECF No. 11 ¶ 1. He claims that the TSA terminated him because of his age, and that the process used to terminate his employment violated his substantive and procedural due process rights under the Fifth Amendment. *See* ECF No. 11-1.

Plaintiff's job performance during his tenure was "excellent and he received favorable performance reviews both quarterly and annually throughout the five and half years of his employment." ECF No. 11 ¶ 2. Starting in May 2019, Plaintiff formed a friendship with Shelly Corwin, "a United Airlines employee working at the [airport] two days a week." *Id.* ¶ 8. The two exchanged phone numbers, and "communicated by text message for over a month until they went on a date on June 24, 2019." *Id.*

---

[1] The Court stayed Defendants' obligation to respond to the Motion for Summary Judgment at the April 30, 2024 motion hearing. *See* ECF No. 69.

[2] Unless otherwise noted, all factual allegations are taken from Plaintiff's Amended Employment Discrimination Complaint ("Complaint"), ECF No. 11, and are presumed to be true for the purposes of the motion to dismiss. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Communications continued for a brief period afterward, but in "July 2019, [Ms.] Corwin slowed the communications" and did not reply to Plaintiff's inquiries about her unresponsiveness. *Id*.

Following a September 26, 2019 conversation in which Plaintiff agreed not to continue pursuing a relationship with Ms. Corwin, she filed a harassment complaint against him. *Id*. ¶¶ 8–9. Plaintiff's supervisors informed him of this complaint on September 29, 2019, and "issued him a Cease and Desist letter to stop communicating with [Ms.] Corwin," though Plaintiff "was allowed to continue working around, and with Ms. Corwin in a professional manner." *Id*. ¶ 9. On November 21, 2019, he was "again, issued . . . a No Contact Order which stated that Warrington and Corwin could only talk when necessary for work." *Id*. ¶ 10.

Six days after receiving this order, Plaintiff accidentally "butt dial[ed]" Ms. Corwin's phone while attempting to check a text message from his mother. *Id*. "The call was not answered and Warrington ended the call immediately." *Id*. Nonetheless, on December 9, 2019, Plaintiff's supervisor issued him a Notice of Proposed Removal, which included charges of "Conduct Unbecoming for allegedly harassing [Ms.] Corwin and for Failure to Follow Instruction." *Id*. ¶ 13. Plaintiff discussed this notice with his supervisors and was informed he had the opportunity to dispute the removal and "would be allowed to present evidence in his own defense." *Id*. ¶ 14. Plaintiff did so, and "presented physical evidence to prove his version of events." *Id*. ¶ 15. Around this time, Ms. Corwin also "sought a restraining order against Warrington at the direction of" Transportation Security Managers Daniel Bontrager and Darrell Abbott, though this request was denied. *Id*. ¶ 16. The TSA subsequently investigated Plaintiff's conduct and

communications with Ms. Corwin, evaluated the evidence he presented, and on January 16, 2020, "upheld Warrington's termination." *Id*. ¶ 17. Plaintiff later "filed administrative charges alleging age discrimination with the appropriate agency office but the Agency ruled against him on or about July 27, 2022." *Id*. ¶ 22.

Plaintiff brings three claims against all Defendants, including Mr. Mayorkas and Mr. Pekoske ("Individual Defendants") in both their individual and official capacities, and against the DHS and TSA ("Agency Defendants"). First, he claims he was terminated due to age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Second, he claims that the employment termination process violated his substantive and procedural due process rights under the Fifth Amendment.

In his request for relief, Plaintiff seeks money damages in the form of lost wages; interest on unpaid wages; damages pursuant to the ADEA; compensatory, and punitive damages; and equitable relief in the form of reinstatement to the same or a similar position. ECF No. 11 at 8.

## II.    MOTION TO DISMISS

### a.  Standards for Dismissal

#### i.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016)

4

(citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). As the party seeking to invoke the jurisdiction of this court, Plaintiff bears the burden of alleging facts that support jurisdiction. *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction") (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)).

### ii.    Rule 12(b)(2)

Rule 12(b)(2) allows a defendant to challenge the court's personal jurisdiction over the named parties. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the Defendants. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). "[T]he plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) (citation omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court's focus is upon the Defendants relationship with the District of Colorado and this litigation; "so long as it creates a 'substantial connection'" with this District, even a single act can support jurisdiction. *Leachman*

*Cattle of Colo., LLC v. Am. Simmental Ass'n*, 66 F. Supp. 3d 1327, 1336 (D. Colo. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 462 (1985)). In considering whether the Defendants had sufficient contacts with this District to support the Court's exercise of personal jurisdiction, the Court must accept all well pled facts and must resolve any factual disputes in favor of Plaintiff. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### iii.    Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### iv.    Pro Se Plaintiff

Plaintiff proceeds pro se. Accordingly, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### b.  Analysis

### i.    Claims Against Individual Defendants

Defendants argue that the individual capacity claims[3] against the Individual Defendants should be dismissed because: (1) the Court lacks personal jurisdiction over

---

[3] Plaintiff brings claims against the Individual Defendants in both their individual and official capacities. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hinkle Fam. Fun Ctr., LLC v. Grisham*, No. 22-2028, 2022 WL 17972138, at *2 (10th Cir. Dec. 28, 2022) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)), *cert. denied*, 143 S. Ct. 2613 (2023). Accordingly, Plaintiff's

the Individual Defendants; (2) the ADEA does not allow for individual liability against employers acting in their supervisory capacities; (3) Plaintiff may not recover money damages for his constitutional claims; and (4) the Individual Defendants are entitled to qualified immunity on Plaintiff's constitutional claims. ECF No. 37 at 5.

The Court first addresses the threshold issue of personal jurisdiction. *See United States v. Botefuhr*, 309 F.3d 1263, 1270, 1275 (10th Cir. 2002) (declining to consider other arguments for dismissal after concluding the district court lacked personal jurisdiction over defendants). The Court finds that it lacks personal jurisdiction over the Individual Defendants.

"The requirement that a court have personal jurisdiction flows from the Due Process Clause. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Peavey v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (brackets, ellipses, and internal quotation marks omitted). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent. The personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal case citations omitted).

---

official capacity claims against the Individual Defendants are duplicative of his claims against the Agency Defendants, and are addressed below.

"To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). These contacts may result in a court having general or specific personal jurisdiction. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic as to essentially render it "at home" in that state. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). Specific jurisdiction arises where a defendant purposefully directs activities to the residents of the forum, and the cause of action arises out of those activities. *See Melea, Ltd. V. Jawer SA,* 511 F.3d 1060, 1066 (10th Cir. 2007).

Plaintiff argues that this Court has personal jurisdiction over the Individual Defendants because they "were DHS/TSA employees and within Warrington's chain of command" and they were "mentioned by name" in an EEOC Report of Information ("ROI") following his termination. ECF No. 54 at 2. Plaintiff essentially argues that the Individual Defendants are subject to this Court's personal jurisdiction because of their supervisory roles over these agencies. *See id*. However, "numerous courts, including our own, have held that broad supervisory authority is insufficient to render a government official subject to general personal jurisdiction in an individual capacity suit." *Yellowbear v. Ashe*, 612 F. App'x 918, 921 (10th Cir. 2015). Consequently, this Court cannot exercise general personal jurisdiction over the Individual Defendants solely due to their roles as agency supervisors. Additionally, the Court does not have specific jurisdiction over the Individual Defendants—Plaintiff does not allege that they were

involved in his termination in any way, and points to no actions by the Individual Defendants directed to the forum state. Accordingly, the Court may not exercise personal jurisdiction over the Individual Defendants, and Plaintiff's individual capacity claims against them should be dismissed.

### ii.    Claims Against the Agency Defendants

Defendants argue that all claims against the Agency Defendants should also be dismissed. ECF No. 37 at 10. They first argue that Plaintiff's due process claims are precluded by the administrative remedies provided by the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 et seq. ECF No. 37 at 11. Next, they argue Plaintiff's due process claims for money damages should be dismissed under the principle of sovereign immunity. *Id.* at 11–12. Lastly, the Agency Defendants argue that Plaintiff's ADEA and due process claims should be dismissed for failure to state a claim. *Id.* at 11.

### 1.  Application of the CSRA

The Agency Defendants argue that Plaintiff's due process claims are precluded by the CSRA, which provides "a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). The Supreme Court has held that the CSRA precludes judicial review for personnel actions taken against federal employees. *United States v. Fausto*, 484 U.S. 439, 455 (1988); *see also Tompkins v. United States Dep't of Veterans Affs.*, 16 F.4th 733, 743 (10th Cir. 2021) (holding that the CSRA "preclude[s] judicial review of agency employment decisions even if the employee's complaint raised constitutional claims and merely sought injunctive relief").

However, Plaintiff was employed by the TSA as a TSO. Accordingly, Plaintiff's administrative remedies regarding his federal employment in this particular role are governed not by the CSRA, but by the Aviation and Transportation Security Act of 2001 ("ATSA"), codified in 49 U.S.C. § 44935. Public Law 107–71, Title I, § 111(d), 115 Stat. 620, codified as a note to 49 U.S.C. § 44935, provides:

> Notwithstanding any other provision of law, the [Administrator of the TSA] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [Administrator of the TSA] determines to be necessary to carry out the screening functions of the Under Secretary under section 44901 of title 49, United States Code.

49 U.S.C. § 44935. Courts have repeatedly held that the ATSA "displaces the CSRA (and all other federal personnel statutes or regulations) as the sole remedy for challenging personnel actions for TSA screeners." *Hadfield v. United States*, No. 18-cv-03155-MEH, 2019 WL 6038064, at *2 (D. Colo. Nov. 12, 2019) (citing 49 U.S.C. § 44935 note); *see also Scull v. Wolf*, No. 20-cv-01624-NYW, 2020 WL 7384842, at *6 (D. Colo. Dec. 16, 2020) ("ATSA vests sole discretion to hire, fire, and set the terms, standards, and conditions of employment for the TSO workforce with the TSA— notwithstanding other federal laws."); *Howery v. Chertoff*, No. CIV.A. H-08-196, 2009 WL 890400, at *7 (S.D. Tex. Mar. 27, 2009) ("TSA employees cannot rely on the CSRA to challenge personnel decisions.").

However, to the Court's knowledge, courts in this District have not yet considered whether the ATSA may bar a TSA employee's constitutional claim, and Courts in other districts have reached divergent outcomes on this issue. *See Clifton v. Hawley*, No. SACV 07-01326-CJC, 2008 WL 11338607, at *6 (C.D. Cal. June 9, 2008) (declining to exercise subject matter jurisdiction over a TSA screener's constitutional claims because

11

the ATSA provided "a mechanism for review of his claims for equitable relief"); *Conyers v. Rossides*, 558 F.3d 137, 150 (2d Cir. 2009) (declining to decide whether the ATSA, "which would appear to exempt screeners from CSRA coverage, similarly divests the federal courts of jurisdiction over [the plaintiff's] constitutional claims"); *Zynger v. Dep't of Homeland Sec.*, 615 F. Supp. 2d 50, 58 (E.D.N.Y. 2009) (same), *aff'd*, 370 F. App'x 253 (2d Cir. 2010); *Am. Fed'n of Gov't Emps. Loc. 1 v. Stone*, 502 F.3d 1027, 1031 (9th Cir. 2007) (holding that the ATSA did not express "a clear intention on the part of Congress to prohibit judicial review of employees' colorable constitutional claims" and that while the plaintiff had no statutory right to appeal under the CSRA, he did have the right to judicial review of his constitutional claim for equitable relief); *Albani v. United States*, No. CIV.A. 09-4790, 2010 WL 2364426, at *9 (E.D. Pa. June 9, 2010) (collecting cases and finding subject matter jurisdiction over a TSA employee's constitutional claims).

Because the Agency Defendants' other arguments for dismissal are dispositive of Plaintiff's due process claims, and because none of the parties have presented argument on this issue, the Court declines to determine whether the ATSA may bar Plaintiff's due process claims. *See Zynger*, 615 F. Supp. 2d at 58 (declining to determine whether the ATSA preempted a TSA employee's constitutional claims because those claims failed on the merits).

### 2. Sovereign Immunity

Plaintiff seeks both equitable relief and money damages for alleged violations of his due process rights under the Fifth Amendment. However, as explained below, Plaintiff may not pursue a claim for money damages against the Agency Defendants.

In general, the principle of sovereign immunity "shields the Federal Government and its agencies from suit." *Dahl v. United States*, 319 F.3d 1226, 1228 (10th Cir. 2003) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994)). "Absent express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States." *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006) (citing *United States v. Sherwood*, 312 U.S. 584, 486 (1941)). "Because the United States defines the terms and conditions upon which it may be sued, Plaintiff must identify a specific statute that expressly waives the federal government's sovereign immunity." *Small v. Astrue*, No. 08-cv-1864-LTB-KLM, 2009 WL 2134345 at *6 (D. Colo. July 14, 2009) (citation omitted).

Plaintiff points to no statute in which the federal government has waived its sovereign immunity to this type of suit. *See, e.g.*, *Young v. Fed. Deposit Ins. Corp.*, 763 F. Supp. 485, 486 (D. Colo. 1991) (holding that FDIC employee's claim/suit alleging due process violation concerning his termination "must be dismissed because the United States has not waived sovereign immunity"). Consequently, the Court does not have subject matter jurisdiction over Plaintiff's due process claims for money damages.

### 3. Failure to State a Procedural or Substantive Due Process Claim

The Agency Defendants argue that Plaintiff's procedural and substantive due process claims for equitable relief must be dismissed for failure to state a claim upon which relief can be granted. ECF No. 37 at 12–14.

> [P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason

13

regardless of how fair the procedures are that are used in making the decision.

*Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). "To determine whether a plaintiff has been deprived of procedural due process, courts ask two questions: (1) Did the plaintiff possess a protected property or liberty interest to which due process protections apply? And if so, (2) was the plaintiff afforded an appropriate level of process?" *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff alleges a "property interest and right in his job." ECF No. 11-1 ¶ 40. Whether Plaintiff's employment constituted a protected property interest depends on the nature of his employment—"[f]or example, an employee may possess a property interest in public employment if []he has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1251 (10th Cir. 2007). However, "[a]t-will employees lack a property interest in continued employment." *Id.* at 1252 (citing *Bishop v. Wood*, 426 U.S. 341, 345–47 (1976)). The Amended Complaint does not allege that his employment as a TSO was anything other than at-will. Therefore, it fails to adequately plead a procedural due process claim, and this claim should be dismissed.

Even assuming *arguendo* that Plaintiff's employment as a TSO constituted a protected property interest, he was afforded an appropriate level of process. "'[T]he root

14

requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). Plaintiff concedes he was provided two written warnings about his conduct. ECF No. 11 ¶¶ 9–10. He was later given a written notice of his proposal removal and met with his supervisors to discuss it. *Id.* ¶ 13. He was further provided the opportunity to respond to the allegations in the notice, and to present evidence in his own defense, which he did. *Id.* ¶¶ 14–15. Finally, he had access to administrative remedies allowing him to appeal the termination, which he used. ECF No. 11-1 ¶¶ 22–24. Plaintiff was not only "given an opportunity for a hearing" but availed himself of it. *Loudermill*, 470 U.S. at 542. Plaintiff's procedural due process claim should be dismissed.

Because an adequately pled substantive due process claim must also allege "a liberty or property interest . . . to which the protection of due process can attach," *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998) (quoting *Brenna v. Southern Colo. State Coll.*, 589 F.2d 475, 476 (10th Cir. 1978)), Plaintiff's substantive due process claim should also be dismissed.

Even if Plaintiff had adequately pled a sufficient liberty or property interest in his continued employment, Plaintiff must also show that the governmental action "is arbitrary, irrational, or shocking to the contemporary conscience" in order to plead a substantive due process violation. *Darr*, 495 F.3d at 1257.

> To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or

15

> actual harm that is truly conscience shocking. . . . The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct.

*Livsey v. Salt Lake Co.*, 275 F.3d 952, 957–58 (10th Cir. 2001) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)). The decision to terminate an employee for violating ethical rules is not "arbitrary, capricious, or shocking to the conscience, but is a rational response to the problems posed." *Id*. at 1258. Similarly, terminating an employee because of their alleged harassment, even when such harassment is unintentional, also does not rise to this high standard. *See Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1026 (D. Colo. 2000). Plaintiff disputes that his actions constituted harassment but concedes that the TSA stated that Plaintiff was terminated because of his alleged harassment of Ms. Corwin. ECF No. 11 ¶ 13. Nothing about that decision shocks the conscience or appears arbitrary or capricious. Rather, it represents a "rational response to the problems posed." *Darr*, 495 F.3d at 1258. Plaintiff therefore fails to adequately allege any violation of his Fifth Amendment due process rights.

### 4.  Failure to State an ADEA Age Discrimination Claim

The ADEA prohibits employers from discrimination against an employee over the age of forty "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Where there is no direct evidence of age discrimination, courts apply the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020). "At the first step of the analysis, a plaintiff must establish a prima facie case of age discrimination. If the plaintiff succeeds, the burden of production then shifts to the

employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual." *Id.* (internal citations and quotation marks omitted). Where an employee was terminated, the elements of a prima facie age discrimination case are typically that the plaintiff was "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age." *Id.* (quoting *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).

"To establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). "Although [a plaintiff] need not allege that her age was the sole motivating factor for her termination, []he must allege that 'age was the factor that made a difference.'" *Littlewood v. Novartis Pharms. Corp.*, No. 21-cv-02559-CMA-SKC, 2022 WL 3081919, at *3 (D. Colo. Aug. 3, 2022) (quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277–78 (10th Cir. 2010)); *see also Wheeler v. Bd. of Cnty. Commissioners of Cnty. of LeFlore*, No. CV-22-115-RAW-GLJ, 2023 WL 3562959, at *2 (E.D. Okla. May 19, 2023) ("At the motion-to-dismiss stage . . . Plaintiff must allege facts that support plausible 'but-for' causation, connecting the alleged discriminatory conduct to an adverse employment action.") (internal citations and quotation marks omitted).

It has been said that a plaintiff need not plead a prima facie claim to survive a motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). And

17

we are cautioned that the *McDonnell Douglas* framework only provides a "flexible

evidentiary standard," and "should not be transposed into a rigid pleading standard for

discrimination cases." *Scribner v. Durango Coca-Cola Bottling Co.*, No. 23-cv-01263-

NYW-KAS, 2023 WL 7003492, at *4 (D. Colo. Oct. 24, 2023) (quoting *Swierkiewicz v.

Sorema N. A.*, 534 U.S. 506, 512 (2002)); *see also Morman v. Campbell Cnty. Mem'l

Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) ("The inferences offered by the

*McDonnell Douglas* framework assist judges in resolving motions to dismiss by

providing an analytical framework to sift through the facts alleged."). To survive a motion

to dismiss, the "Plaintiff must put forth sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face, and the Court may look to the prima

facie elements to determine whether Plaintiff has met this threshold." *Scribner*, 2023 WL

7003492, at *4 (internal citations and quotation marks omitted).

Here, the Complaint does not allege any direct evidence of age discrimination.[4]

Therefore, the Court must look at the *McDonnell Douglas* elements to "determine

whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192. The

Complaint alleges that (1) Plaintiff was 49 years old when he was terminated, (2) he

performed greater than satisfactory work, receiving favorable performance reviews

quarterly and annually throughout his five and a half years of employment, (3) he was

terminated from this employment, and (4) Plaintiff's coworkers stated that the employee

who replaced Plaintiff was under 40 years old. ECF Nos. 11, ¶¶ 1, 2, 17; 11-1, ¶ 30.

---

[4] "Direct evidence demonstrates on its face that the employment decision was reached
for discriminatory reasons." *Steele v. Stallion Rockies Ltd*, 106 F. Supp. 3d 1205, 1210
(D. Colo. 2015) (quoting *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir.
2007)).

Accepting these allegations as true, Plaintiff has arguably alleged a prima facie case. But Plaintiff also outlines, in extensive detail, the reasons why the TSA says it terminated him—the allegations of harassment by a female airport worker. This is, under the *McDonnell Douglas* framework, a legitimate non-discriminatory basis for the termination, and it should put the onus back on the Plaintiff to at least allege some facts that would establish (or at least make plausible) that the TSA's claimed basis for the termination was but a pretext for age discrimination. *Jones*, 617 F.3d at 1280 (applying *McDonnell Douglas* in the ADEA summary judgment context and explaining that proof of pretext requires "a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason"). Recognizing that this matter is before the Court on a motion to dismiss and not a motion for summary judgment, there still must be some allegations that would imply the TSA's stated reason for the termination was a pretext for age discrimination. Such non-conclusory allegations are missing in this case.

The Court acknowledges that "[a] number of courts in this District have held that allegations that the plaintiff was terminated and replaced by a younger employee are sufficient, at the pleading stage, to give rise to an inference of age discrimination." *Scribner*, 2023 WL 7003492, at *5 (collecting cases). However, in this case, apart from Plaintiff's allegation that the employee that replaced him was under forty years old, the Complaint is completely devoid of any allegations that Plaintiff's termination had anything to do with Plaintiff's age. Instead, the Complaint lays out in detail Plaintiff's claim that he was wrongfully terminated as a result of fabricated sexual harassment allegations. In fact, Plaintiff undercuts the notion that the Agency Defendants are discriminating against older employees when he alleges that in 2017, TSA employee

19

Tom Hamilton[5] was allowed to retire with full retirement benefits despite sexually harassing a woman. ECF No. 11-1 ¶ 31. Plaintiff's allegations regarding Hamilton undercut his ADEA claim because Plaintiff is effectively alleging that TSA treated another older employee, who was also the subject of sexual harassment allegations, better than it treated Plaintiff.

Considering the Complaint in its entirety, the Court finds that Plaintiff has not alleged that "age was the factor that made a difference" in his termination. *Jones*, 617 F.3d at 1277–78. Indeed, district courts in this circuit evaluating ADEA claims at the motion to dismiss stage have repeatedly noted the importance of allegations of age-based discrimination in the complaint. *See Williams v. City of Arvada*, No. 21-cv-02236-NYW, 2022 WL 1102532, at \*6 (D. Colo. Apr. 13, 2022) (denying motion to dismiss ADEA claim and finding that the plaintiff's allegations that the employer's repeated questions about how old the plaintiff was and how long the plaintiff planned on working there "sufficiently nudge [p]laintiff's age discrimination claim 'across the line from conceivable to plausible.'" (citation omitted)); *Bevins v. First Nat'l Bank of Omaha*, No. 20-cv-00557-RM-NYW, 2020 WL 9257255, at \*4 (D. Colo. July 27, 2020) (finding that the allegation that the plaintiff was replaced with a younger employee, "when considered in conjunction with [p]laintiffs' allegations of disparate treatment, satisfy the third and fourth elements of disparate treatment claim" at the motion to dismiss stage), *report and recommendation adopted*, No. 20-cv-00557-RM-NYW, 2020 WL 9257256 (D. Colo. Aug. 12, 2020); *Hay v. Fam. Tree, Inc.*, No. 16-CV-03143-CMA-KLM, 2018

---

[5] Although the Complaint does not provide Hamilton's age, the fact that Hamilton retired in recent years indicates that he was likely above the age of 40.

20

WL 1084148, at *10 (D. Colo. Feb. 28, 2018) (denying motion to dismiss ADEA claim where the plaintiff alleged a pattern of negative treatment toward older employees, in addition to the four prima facie elements in her termination), *report and recommendation adopted*, No. 16-cv-03143-CMA-KLM, 2018 WL 1399909 (D. Colo. Mar. 20, 2018)*; Adenowo v. Denver Pub. Sch.*, No. 14-cv-02723-RM-MEH, 2015 WL 4511924, at *3 (D. Colo. June 17, 2015) (holding that plaintiff's allegation that the defendant replaced him with a "young" teacher was sufficient to withstand a motion to dismiss, when considered alongside the plaintiffs' additional allegations of disparate treatment against older employees) *report and recommendation adopted*, No. 14-cv-02723-RM-MEH, 2015 WL 4504931 (D. Colo. July 24, 2015).

Here, "presum[ing] all of plaintiff's factual allegations are true and constru[ing] them in the light most favorable to the plaintiff," *Hall*, 935 F.2d at 1109, the Complaint, as a whole, does not contain sufficient factual matter to allow the Court to draw the "reasonable inference" that the Agency Defendants are liable for age discrimination under the ADEA. *See Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Williams v. City of Arvada*, No. 21-cv-02236-NYW, 2022 WL 1102532, at *4 (D. Colo. Apr. 13, 2022) ("The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.") (quoting *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)). Although Plaintiff has alleged the bare prima facie elements of an age discrimination claim for termination, Plaintiff has also alleged in detail that he was wrongfully terminated due to what he claims were fabricated sexual harassment allegations. Plaintiff has not plausibly alleged

that his age was a reason for his termination. *See Sprague v. Kasa Indus. Controls, Inc.*, 250 F.R.D. 630, 633–34 (D. Kan. 2008) (holding that where "the only allegations made to support [a plaintiff's ADEA] claim . . . are that she was fifty-six years old at the time of her termination, that defendant terminated her because of her age, that certain representatives of defendant were aware of her age, and that she suffered damages," that "[t]his is a classic example of a formulaic recitation of the elements of a cause of action, which is clearly insufficient under the *Twombly* standard"); *Wheeler v. Bd. of Cnty. Commissioners of the Cnty. of Le Flore Cnty.*, No. CIV-22-115-RAW-GLJ, 2022 WL 20099421, at *10 (E.D. Okla. Dec. 30, 2022) (finding that the plaintiff did not sufficiently allege that her age was the factor that made a difference in her termination where the plaintiff "merely offers the formulaic recitation of the elements and conclusory statement that but for her age she would not have been terminated" and "plainly alleges that she was 49 at the time she was terminated and was a member of a protected class, she suffered an adverse employment action when she was terminated, and she was qualified for the position at issue"), *report and recommendation adopted in part, rejected in part sub nom. Wheeler*, 2023 WL 3562959.

Because Plaintiff has not plausibly alleged that "age was the factor that made a difference" in his termination, the Court therefore recommends that the ADEA claim be dismissed.

III.    **MOTION FOR SUMMARY JUDGMENT**[6]

Because the Court recommends dismissal of all claims, it also recommends that

Plaintiff's motion for summary judgement on these same claims be denied. *Johnson ex*

*rel. Johnson v. Bodenhausen*, 835 F. Supp. 2d 1092, 1096 (D. Colo. 2011).

IV.    **CONCLUSION**

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendants'

Motion to Dismiss, ECF No. 37, be **GRANTED**; and Plaintiff's Motion for Summary

Judgment, ECF No. 64, be **DENIED**.


**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case. A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy. The District Judge need**

**not consider frivolous, conclusive, or general objections. A party's failure to file**

**and serve such written, specific objections waives de novo review of the**

**recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53**

**(1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*,

**91 F.3d 1411, 1412–13 (10th Cir. 1996).**

---

[6] On April 30, 2024, the Court stayed Defendants' obligation to respond to the Motion
for Summary Judgment pending a determination on the Motion to Dismiss. *See* ECF
No. 69. However, the Court may rule on a motion at any time after it is filed.
D.C.COLO.LCivR 7.1(d).

Dated at Denver, Colorado this 2nd day of August, 2024

_____

N. Reid Neureiter
United States Magistrate Judge