**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-02792-NYW-NRN

SCOTT THOMAS WARRINGTON,

      Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY (DHS),
TRANSPORTATION SECURITY ADMINISTRATION (TSA),
ALEJANDRO NICHOLAS MAYORKAS, individually and in his official capacity as
Secretary of the DHS, and
DAVID PETER PEKOSKI, individually and in his official capacity as Administrator of
the TSA,

      Defendants.

---

**ORDER ON MAGISTRATE JUDGE'S RECOMMENDATION**

---

This matter is before the Court on the Report and Recommendation on
Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment (the
"Recommendation") issued by the Honorable N. Reid Neureiter on August 2, 2024.
[Doc. 77].  Judge Neureiter recommends that Defendants' Motion to Dismiss, [Doc. 37],
be granted and that Plaintiff's Motion for Summary Judgment, [Doc. 64], be denied, *see*
[Doc. 77 at 23].  Plaintiff Scott Thomas Warrington ("Plaintiff" or "Mr. Warrington") has
filed objections to the Recommendation.  [Doc. 81].  For the reasons set forth in this Order,
Plaintiff's objections are respectfully **SUSTAINED in part** and **OVERRULED in part** and
the Recommendation is **ADOPTED in part**.

## LEGAL STANDARDS

### I.   Rule 72(b)

A district court may refer a dispositive motion to a magistrate judge for recommendation.  28 U.S.C. § 636(b)(1)(B).  The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Such specific objections permit "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.* at 1059 (quotation omitted).

### II.   Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge a court's exercise of personal jurisdiction over it.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of demonstrating that a court has personal jurisdiction over the defendant.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  When a court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008).  This showing may be made through affidavits or other written materials.  *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020).   "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are

challenged by an appropriate pleading." *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

At this stage, the trial court must take the well-pleaded allegations in the plaintiff's complaint as true, so long as they are not contradicted by the defendant's affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The court need not credit conclusory, implausible, or speculative allegations. *Dental Dynamics*, 946 F.3d at 1228; *Dudnikov*, 514 F.3d at 1070.

## III. Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## IV. Pro Se Filings

Because Plaintiff proceeds pro se, the Court affords his filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). But the Court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to

represented parties, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## BACKGROUND

The factual background of this case is set forth in Judge Neureiter's Recommendation, *see* [Doc. 77 at 2–4], and the Court repeats it here only as necessary to resolve Plaintiff's objections.

Mr. Warrington, who is over 40 years of age, was employed by the Transportation Security Administration ("TSA") as a transportation security officer from 2014 to 2020. [Doc. 11 at ¶ 1; Doc. 11-1 at ¶ 27].[1]   Throughout his employment, he received favorable annual and quarterly performance reviews.  [Doc. 11 at ¶ 2].

In May 2019, Mr. Warrington "started a friendship" with a United Airlines employee. [*Id.* at ¶ 8].   The two went on a date in June, and on September 26, 2019, they "agreed to be only friends."   [*Id.*].   Mr. Warrington was later informed that the United Airlines employee had made a harassment complaint against him.   [*Id.* at ¶ 9].   Plaintiff was instructed to cease communications with the employee, and he obeyed this instruction, though they still communicated at work about work-related things.  [*Id.* at ¶¶ 9–10].

Plaintiff alleges that, in November 2019, he accidentally "butt dial[ed]" the United Airlines employee; when he realized the call in progress, he ended the call, which had not been answered.   [*Id.* at ¶ 12].   On December 9, 2019, Plaintiff was given a Notice of Proposed Removal, informing Plaintiff that he was charged with "Conduct Unbecoming," based on the alleged harassment, and "Failure to Follow Instructions," based on the

---

[1] Plaintiff's Amended Complaint contains an attachment titled "Statements and Claims." *See* [Doc. 11-1 at 1].   The Court construes [Doc. 11] and [Doc. 11-1] together to be Plaintiff's Amended Complaint.

November "butt dial." [*Id.* at ¶ 13]. His employment was eventually terminated on January 16, 2020. [*Id.* at ¶ 17]. Plaintiff raises a number of issues with the termination process, including that (1) the investigation into the harassment claim was "completely unfair and inadequate"; (2) he was not allowed to present evidence in his defense; (3) TSA "failed to follow the management directives applicable to [Plaintiff's] employment in making the decision to terminate [him]"; and (4) TSA "rel[ied] on inherently unreliable evidence." [*Id.* at ¶¶ 14, 18–19; Doc. 11-1 at ¶ 35]. Plaintiff was replaced by an employee "outside of his age class." [Doc. 11-1 at ¶ 30].

After his termination, Mr. Warrington "filed administrative charges alleging age discrimination with the appropriate agency office," but "the Agency ruled against him on or about July 17, 2022." [Doc. 11 at ¶ 22]. Plaintiff initiated this lawsuit on October 21, 2022, [Doc. 1], and filed the operative Employment Discrimination Complaint (the "Amended Complaint") on December 1, 2022, [Doc. 11; Doc. 11-1]. In his Amended Complaint, he names the TSA; the Department of Homeland Security ("DHS," and collectively with TSA, the "Agency Defendants"); Alejandro Mayorkas, the Secretary of DHS ("Secretary Mayorkas"); and David Peter Pekoske, the TSA Administrator ("Administrator Pekoske," and with Secretary Mayorkas, the "Individual Defendants") as Defendants. [Doc. 11 at 1]. Plaintiff asserts three claims against all Defendants: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) a Fifth Amendment substantive due process claim; and (3) a Fifth Amendment procedural due process claim. [Doc. 11-1 at ¶¶ 22–48].

Defendants moved to dismiss Plaintiff's claims, arguing that his claims are subject to dismissal under Rule 12(b)(1), Rule 12(b)(2), Rule 12(b)(5), and Rule 12(b)(6).

[Doc. 37 at 2–3].   A few months later, Plaintiff filed his Motion for Summary Judgment, wherein he requests that judgment be entered in his favor.   [Doc. 64 at 1].   Both of these Motions were referred to Judge Neureiter for recommendation.   [Doc. 38; Doc. 65].

Judge Neureiter recommends that the Court grant the Motion to Dismiss and deny the Motion for Summary Judgment.   [Doc. 77 at 2].   Plaintiff has objected to the Recommendation, *see* [Doc. 81], to which Defendants have responded, *see* [Doc. 82].

**ANALYSIS**

**I.      The Motion to Dismiss**

Judge Neureiter recommends that the Motion to Dismiss be granted in full. [Doc. 77 at 2].   Specifically, he recommends that Plaintiff's individual-capacity claims against the Individual Defendants be dismissed because the Court lacks personal jurisdiction over them.   [*Id.* at 7–10].   Turning to the Agency Defendants, Judge Neureiter recommends that, to the extent Plaintiff seeks money damages in conjunction with his constitutional claims against the Agency Defendants, those claims be dismissed on sovereign immunity grounds.   [*Id.* at 12–13].   He further concludes that the constitutional claims are subject to dismissal in their entirety because Plaintiff has not plausibly alleged a violation of his substantive due process or procedural due process rights.   [*Id.* at 13–16].   And finally, he recommends that Plaintiff's ADEA claim be dismissed for failure to state a claim.   [*Id.* at 16–22].   Plaintiff raises various objections to the Recommendation, which the Court considers below.

**A.      Ruling Prior to Discovery**

Plaintiff first appears to take issue with the possible dismissal of his claims prior to the commencement of discovery.   He represents that, with respect to his administrative

proceeding, he "never received nor is there any document labeled dismissal and right to sue letter, . . . nor was there ever a letter of determination submitted in some form to the plaintiff."   [Doc. 81 at 1].   He argues that "[t]he plaintiff and the court must first have DHS/TSA Civil Rights Division or the EEOC Federal Operations Division do their job and provide the necessary documentation!" and that "no one should be dismissing this case until all the relevant documentation is included."  [*Id.*].  According to Plaintiff, without these documents, "not even Magistrate Judge N. Reid Neureiter or any court can reasonably come to an informed recommendation conclusion [sic]" on the Motion to Dismiss.  [*Id.* at 2].

For additional background, the Court notes that Mr. Warrington has referenced the underlying administrative process at various times in this litigation, appearing to assert that he proved discrimination at that stage.  *See, e.g.,* [Doc. 47 at 1–2 ("Mr. Warrington proved . . . that age discrimination/Disparate treatment through the BUT/FOR Test did occur during May and June 2020. . . .  Mr. Warrington is a Pro Se Litigant and believes the question of whether he was discriminated against by DHS/TSA was answered on June 30th, 2020, therefore if true, why has Mr. Warrington had to appeal to the US District Court of Colorado?")].  In addition, after Defendants filed their Motion to Dismiss, Plaintiff filed a motion requesting that Defendants "[p]roduce and permit plaintiff to enter into evidence" documents purportedly produced or generated during, or related to, the administrative proceeding.  [Doc. 41 at 1].  Judge Neureiter denied Plaintiff's request, explaining that discovery was not yet permitted under Rule 26(d), *see* [Doc. 50 at 3]; *see also* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from

initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."), and Plaintiff did not object to Judge Neureiter's ruling pursuant to Rule 72. Therefore, to the extent Plaintiff's objection can be construed as challenging Judge Neureiter's denial of Plaintiff's motion for early discovery, that objection is **OVERRULED** as untimely. *See* Fed. R. Civ. P. 72(a) (objections to orders ruling on non-dispositive matters due 14 days after service).

To the extent Plaintiff argues that Judge Neureiter should have considered extraneous documents (that do not appear to be in the case record and that Plaintiff suggests he himself does not have) in ruling on the Motion to Dismiss, or should have deferred ruling on the Motion to Dismiss until Plaintiff had a chance to take discovery, the Court is respectfully unpersuaded by this argument. A motion to dismiss challenges the sufficiency of the allegations in the complaint—not the merits of the plaintiff's claims. *See Toney v. Berkebile*, No. 13-cv-00111-RM-NYW, 2015 WL 1217680, at \*5 (D. Colo. Mar. 13, 2015) (explaining that a motion to dismiss "addresses the adequacy of the allegations . . ., not the sufficiency of latter developed evidence"). It follows that "in determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995); *see also Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012).[2] And because a court's determination on a motion to dismiss is based solely on the allegations in the complaint,

---

[2] A court may consider extraneous documents if they are referenced in the complaint, central to the plaintiff's claims, and no party disputes the documents' authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). This exception to the general rule does not apply here, given that Plaintiff does not direct the Court to any extraneous documents contained in the case record that he wants the Court to consider.

courts routinely—and properly—rule on motions to dismiss prior to the commencement of, or during, discovery.  Therefore, it was proper for Judge Neureiter to only consider the four corners of the Amended Complaint in issuing his Recommendation, and Plaintiff's arguments relitigating the underlying administrative proceedings or emphasizing what he perceives to be the merits of his claims do not demonstrate error.[3]  Plaintiff's objections are respectfully **OVERRULED**.

### B.    Personal Jurisdiction

Next, Plaintiff objects to Judge Neureiter's conclusion that the Court lacks personal jurisdiction over Secretary Mayorkas and Administrator Pekoske.  [Doc. 81 at 3].  In his response to Defendants' Motion to Dismiss, Plaintiff argued that the Court has personal jurisdiction over the Individual Defendants because "every individual Warrington will be asserting as part of this Age Discrimination/Disparate Treatment claim were DHS/TSA employees and within [his] chain of command," such that "the United States and Its Agencies, Officers, or Employees can be sued in an Official Capacity and Sued in an Individual Capacity in the Denver District Court."  [Doc. 54 at 2].  In the Recommendation, Judge Neureiter recommends that the claims against the Individual Defendants be dismissed for lack of personal jurisdiction, reasoning that Secretary Mayorkas's and

---

[3] Plaintiff also appears to argue that (1) the DHS/TSA investigator "was never a neutral party" and that (2) DHS and TSA are withholding documents from Plaintiff.  [Doc. 81 at 2].  But Plaintiff's claims do not appear to be based on these types of allegations, *see generally* [Doc. 11; Doc. 11-1], and these arguments are not directed to Judge Neureiter's Recommendation.  Accordingly, the Court does not address these arguments.  *See Wilson v. Jenks*, No. 12-cv-02495-RM-KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014) ("Plaintiff cannot amend his Complaint through filings in opposition to Defendants' motions to dismiss or through objections in opposition to the Recommendation."); *Saleh v. Silco Oil Co.*, No. 19-cv-02973-PAB-NRN, 2020 WL 4915604, at *3 (D. Colo. Aug. 20, 2020) ("In objecting to the magistrate judge's recommendation, [a party] must raise specific arguments addressing purported errors in the recommendation.").

Administrator Pekoske's broad supervisory authority over their federal agencies is insufficient to confer personal jurisdiction over these Defendants individually.  [Doc. 77 at 9–10].

In his objections, Plaintiff reframes his initial argument a bit, still asserting that the Court has personal jurisdiction over the Individual Defendants because they were at the top of Plaintiff's "chain of command," but newly arguing that each Individual Defendant has designated certain Colorado-based employees as their agents, which renders each liable for the actions of his agents under the theory of vicarious liability.  [Doc. 81 at 3–4].[4]

Plaintiff did not raise this agency theory or vicarious liability theory in support of personal jurisdiction in his response to the Motion to Dismiss.  *See* [Doc. 54].  "In this circuit, theories raised for the first time in objections to the magistrate judge's [recommendation] are deemed waived."  *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001); *see also* NYW Civ. Practice Standard 72.3(b) ("[T]his Court disfavors the consideration of arguments . . . not made to the Magistrate Judge.  Should the objecting party seek to make arguments or introduce exhibits that were not raised before the Magistrate Judge, such party must expressly identify those arguments . . . and explain why such omitted arguments . . . should be considered, in the first instance, upon Objection.").  Accordingly, Plaintiff's argument is not properly before the Court.  Furthermore, vicarious or supervisory liability is not available for Plaintiff's claims against the Individual Defendants.  *See, e.g.*, *Iqbal*, 556 U.S. at 676 ("[V]icarious liability is

---

[4]  Plaintiff again raises allegations and arguments about the sufficiency of the administrative proceeding.  [Doc. 81 at 4–6].  For the reasons explained above, the Court does not consider these arguments.

inapplicable to *Bivens* . . . suits."); *Kahler v. Leggitt*, No. 18-cv-03162-WJM-KMT, 2019 WL 3928622, at *4 (D. Colo. Aug. 20, 2019) ("[T]he ADEA preclude[s] personal capacity suits against individual supervisory employees, as they are not considered 'employers' under the . . . statute[].")*; see also Fuller v. Dep't of Child. & Fams.*, 805 F. App'x 601, 605 (10th Cir. 2020) (finding no error in district court's conclusion that "the ADEA permits suit only against employers and not against supervisory employees").

Accordingly, Plaintiff has not identified any error in Judge Neureiter's conclusion that the Court lacks personal jurisdiction over Secretary Mayorkas or Administrator Pekoske.  This objection is **OVERRULED**.

### C.    Sovereign Immunity

Judge Neureiter concluded in his Recommendation that the Agency Defendants are entitled to sovereign immunity against Plaintiff's due process claims, to the extent he seeks money damages, because the government has not waived sovereign immunity with respect to these claims.  [Doc. 77 at 12–13].  Plaintiff takes issue with this portion of the Recommendation, arguing that Congress has waived the government's sovereign immunity through the Administrative Procedure Act ("APA"), the Federal Tort Claims Act ("FTCA"), the Tucker Act, and the Fair Credit Reporting Act ("FCRA").  [Doc. 81 at 7].

"The United States, as sovereign, is immune from suit unless it waives its sovereign immunity and consents to be sued."  *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006).  Absent express waiver, federal courts lack subject matter jurisdiction over claims asserted against the United States.  *Id.*; *see also Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009) ("The defense of sovereign immunity is jurisdictional in nature.").

Plaintiff's argument that the federal government waived sovereign immunity through the APA, the FTCA, the FCRA, or the Tucker Act was not raised in his response to the Motion to Dismiss and is therefore waived.  *Garfinkle*, 261 F.3d at 1031.  And in any event, the statutes cited by Plaintiff do not demonstrate waiver of immunity.

The APA provides that "[a]n action in a court of the United States *seeking relief other than money damages* . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States."  5 U.S.C. § 702 (emphasis added).  Thus, the APA does not provide an immunity waiver for Plaintiff's due process claims *for money damages*.  And the FTCA "waives sovereign immunity for certain state law tort claims against the United States," *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017), including "claims . . . for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b)(1).  It does not contain a waiver for Plaintiff's substantive or procedural due process claims.  *Cf. Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 126 n.25 (D.D.C. 2016) ("[C]onstitutional tort claims cannot proceed under the FTCA, because the FTCA's [waiver] of sovereign immunity does not extend to constitutional tort claims.").

Moving on, while the United States Supreme Court recently decided that the FCRA waives sovereign immunity, *see Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 50 (2024), this waiver only permits a consumer to "sue 'any' federal agency for defying the law's terms," *id.* at 64.  In other words, the FCRA does not waive the government's sovereign immunity against constitutional claims.  And finally, the Tucker Act provides a cause of action to challenge a bid or proposal for a proposed contract, the

award of a contract, or "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  "The Tucker Act, in other words. . . grants consent to be sued for violations of statutes or regulations 'in connection with' a 'procurement or proposed procurement.'"  *Colo. Bldg. & Const. Trades Council v. U.S. Dep't of Def.*, No. 12-cv-00632-JLK, 2012 WL 3609824, at *2 (D. Colo. Aug. 22, 2012).  Plaintiff does not explain how this statute applies to his due process claims, and the Court cannot conclude that it does.  For these reasons, Plaintiff's objection is **OVERRULED**.

### D.  Failure to State a Claim

Plaintiff also objects to Judge Neureiter's determination that all of Plaintiff's claims should be dismissed for failure to state a claim.  First, he repeats his arguments about a lack of discovery, asserting that "without allowing plaintiff to get to discovery [Judge Neureiter] cannot make an informed decision on this case." [Doc. 81 at 7].  This argument has been addressed above and the Court's ruling will not be repeated here; instead, the Court focuses on Plaintiff's more specific arguments about the strength of his allegations.

### 1.  Procedural Due Process Claim

To determine whether a plaintiff has alleged a plausible procedural due process violation, courts "undertake [a] familiar 'two-step' inquiry."  *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308 (10th Cir. 2018).  First, the court asks whether the defendant's actions deprived the plaintiff of a constitutionally protected interest.  *Id.*  If the answer to that question is yes, the court then considers whether the plaintiff was afforded the appropriate level of process.  *Id.*  As Judge Neureiter recognized, a plaintiff must plausibly allege the existence of a protected property or liberty interest in order to state a

procedural due process claim.  *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016); *see also* [Doc. 77 at 14].

Judge Neureiter concluded that Plaintiff has not identified a constitutionally protected interest for purposes of this claim, recognizing that whether a person's employment constitutes a protected property interest "depends on the nature of his employment." [Doc. 77 at 14].  Employees with tenure, an express or implied employment contract, or protections under state law may possess a property interest in public employment, while at-will employees do not.  [*Id.*]; *see also Darr v. Town of Telluride*, 495 F.3d 1243, 1251–52 (10th Cir. 2007).  Judge Neureiter concluded that Plaintiff cannot state a procedural due process claim based on a property interest in his employment with TSA because Plaintiff "does not allege that his employment . . . was anything other than at-will."  [Doc. 77 at 14].

Plaintiff takes issue with this statement, asserting that federal employees "are NOT at-will employees.  Every federal employee receives due process rights . . . and may be fired only for cause."  [Doc. 81 at 8].  As a preliminary matter, Defendants argued in their Motion to Dismiss that Plaintiff could not plausibly allege a due process claim because he "ha[d] not alleged that he is anything other than an at-will employee," [Doc. 37 at 13], and Plaintiff did not directly challenge this argument in his response, *see* [Doc. 54 at 3–4], which means that his belated argument here is waived, *Garfinkle*, 261 F.3d at 1031.  Moreover, Plaintiff ignores that Judge Neureiter's statement is based on the facts alleged (or not alleged) in the Amended Complaint.  Although Plaintiff alleges that he "had a property interest and right in his job," [Doc. 11-1 at ¶ 45], this unsupported statement is a legal conclusion that need not be accepted as true, *see Wyoming v. U.S. Dep't of Interior*,

839 F.3d 938, 942 (10th Cir. 2016) (courts take well-pleaded factual allegations as true, but do not accept the nonmoving party's legal conclusions as true).  Indeed, Plaintiff does not make express allegations about the nature of his employment and does not otherwise identify the source of his property interest.  *See* [Doc. 11; Doc. 11-1].  It was not error for Judge Neureiter to base his conclusion on the facts alleged in the Amended Complaint.

Furthermore, Judge Neureiter stated in his Recommendation that even if Plaintiff had adequately alleged a constitutionally protected interest, he failed to allege facts showing that he received inadequate process.  [Doc. 77 at 14–15].  Plaintiff does not clearly object to this portion of the Recommendation or Judge Neureiter's analysis, *see* [Doc. 81 at 7–8], which provides an independent basis for dismissal of the procedural due process claim, *M.A.K. Inv. Grp.*, 897 F.3d at 1308.  Accordingly, Plaintiff's objection is **OVERRULED**.

### 2. Substantive Due Process Claim

"[T]he touchstone of due process is protection of the individual against arbitrary action of government."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quotation omitted).  "[T]he Supreme Court recognizes two types of substantive due process claims:  (1) claims that the government has infringed a 'fundamental' right, . . . and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience."  *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721–22 (1997), and *Lewis*, 523 U.S. at 846).  Judge Neureiter analyzed Plaintiff's claim under the "shocks the conscience" test, *see* [Doc. 77 at 15–16], and no Party has objected to this approach.

Judge Neureiter recommends that Plaintiff's substantive due process claim be dismissed under Rule 12(b)(6) because (1) Plaintiff has not adequately alleged a constitutionally protected interest, as discussed above, and (2) Plaintiff has not alleged government action that shocks the conscience. [*Id.* at 15]. In his objections, Plaintiff asserts:

> The Plaintiff's substantive due process was violated the day the DHS/TSA Investigator made a more likely than not determination and submitted it to the EEOC's Federal Operations. The plaintiff from this point on never received a dismissal and right to sue letter or a letter of determination or offer of reconciliation.

[Doc. 81 at 7]. However, these assertions are not clearly connected to any of the allegations in the Amended Complaint, *compare* [*id.*], *with* [Doc. 11-1 at ¶¶ 38–41], and Plaintiff cannot amend his pleading by raising new allegations or theories in his objections, *see Wilson v. Jenks*, No. 12-cv-02495-RM-KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014). Moreover, because Plaintiff does not identify any specific error in Judge Neureiter's conclusion that Plaintiff failed to allege conscious-shocking conduct, his objection is insufficient to warrant de novo review. *One Parcel of Real Prop.*, 73 F.3d at 1059–60; *Saleh v. Silco Oil Co.*, No. 19-cv-02973-PAB-NRN, 2020 WL 4915604, at *3 (D. Colo. Aug. 20, 2020).

The Court finds no error in Judge Neureiter's analysis or conclusion and agrees that the Amended Complaint does not sufficiently allege conscience-shocking conduct, i.e., conduct that is "egregious and outrageous," *Est. of Carrigan v. Park Cnty. Sheriff's Off.*, 381 F. Supp. 3d 1316, 1326 (D. Colo. 2019), or conduct that shows an arbitrary abuse of authority or authority "employed . . . as an instrument of oppression," *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (cleaned up). To the extent Plaintiff

objects to Judge Neureiter's recommendation to dismiss the substantive due process claim, this objection is **OVERRULED**.

### 3.    ADEA Claim

Finally, Mr. Warrington objects to Judge Neureiter's recommendation that the Court dismiss Plaintiff's ADEA claim.  [Doc. 81 at 9].

The ADEA "provides (with just a few exceptions) that 'personnel actions' affecting individuals aged 40 and older 'shall be made free from any discrimination based on age.'" *Babb v. Wilkie*, 589 U.S. 399, 402 (2020) (quoting 29 U.S.C. § 633a(a)).  As Judge Neureiter states in his Recommendation, the *McDonnell Douglas* burden-shifting framework applies in ADEA cases.  *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (summary judgment case) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  This framework has three parts:  first, the plaintiff must establish a prima facie discrimination case; second, if the plaintiff meets this burden, the burden shifts to the defendant to identify a non-discriminatory basis for the adverse employment action; and third, if the defendant makes that showing, the burden shifts back to the plaintiff to show that the defendant's stated reason was pretextual.  *Id.*

However, the requirement to establish a prima facie case "is an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("[T]he 12(b)(6) standard does not require that [the p]laintiff establish a prima facie case in her complaint.").  Similarly, at the motion-to-dismiss stage, "a plaintiff is not required to meet the *McDonnell Douglas* burden-shifting framework."  *Adenowo v. Denver Pub. Schs.*, No. 14-cv-02723-RM-MEH, 2015 WL 4511924, at *3 (D. Colo. June 17, 2015), *report and*

*recommendation adopted*, 2015 WL 4504931 (D. Colo. July 24, 2015).  The elements of

a prima facie case, however, nevertheless "help to determine whether [the p]laintiff has

set forth a plausible claim."  *Khalik*, 671 F.3d at 1192.  Relevant here, "[i]n termination

cases, the elements of a prima facie age discrimination case are typically that the plaintiff

was (1) within the protected class of individuals 40 or older; (2) performing satisfactory

work; (3) terminated from employment; and (4) replaced by a younger person, although

not necessarily one less than 40 years of age."  *Frappied*, 966 F.3d at 1056.

Judge Neureiter recommends that Plaintiff's ADEA claim be dismissed for failure

to state a claim.  [Doc. 77 at 22].  First, he notes Plaintiff's allegations concerning the

nature of his employment and termination and concludes that "Plaintiff has arguably

alleged a prima facie case."  [*Id.* at 18–19].  Then, employing the *McDonnell Douglas*

burden-shifting framework, he explains that Plaintiff's own allegations establish a non-

discriminatory reason why Plaintiff's employment was terminated:   the harassment

allegation.  [*Id.* at 19].  Judge Neureiter then reasons that this "should put the onus back

on the Plaintiff to at least allege some facts that would establish (or at least make

plausible) that the TSA's claimed basis for the termination was but a pretext for age

discrimination."  [*Id.*].  Judge Neureiter then concludes that Plaintiff failed to allege non-

conclusory facts plausibly establishing pretext.  [*Id.* at 19–20].

Plaintiff objects to Judge Neureiter's conclusion.  He asserts that he "was found to

have been discriminated against by the DHS/TSA office of Civil Rights and investigator

Mrs. Arterberry on June 30th 2020."  [Doc. 81 at 9].[5]   He also contends that "[t]he

_____

[5] Defendants respond to this argument by asserting that "the EEO investigator did not
make any findings about unlawful discrimination, and such findings are beyond the scope
of the EEO investigator's work.   Instead, Plaintiff misreads the EEO investigator's
recitation of the prima facie elements of age discrimination as a 'finding' that age

BUT/FOR test in this lawsuit is easily seen as long as those in charge to investigate the facts read ROI, F7 and F9 (when has a satisfactory employee, over the age of 40, and suffered an adverse employment action with no real basis for their firing ever not met the burden of proof regarding age discrimination?)." [*Id.*].

To be sure, Plaintiff's objection is not a model of clarity.  However, Plaintiff's objection does establish his opposition to Judge Neureiter's conclusion that his allegations are sufficient to state an ADEA discrimination claim.  And even absent a clear objection, the Court is permitted to review the Recommendation under any standard it deems appropriate, including de novo review.  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

The Court respectfully disagrees with Judge Neureiter's conclusion with respect to Plaintiff's ADEA claim.  Because the *McDonnell Douglas* framework is not a pleading standard, but an evidentiary one, the Court declines to apply it here—at the pleading stage and prior to the commencement of discovery.  *See Swierkiewicz*, 534 U.S. at 510; *Adenowo*, 2015 WL 4511924, at *3.  In the Court's view, moving to the second step in the *McDonnell Douglas* framework and considering whether there was a non-discriminatory basis for Plaintiff's termination would contravene the Court's obligation to construe the well-pleaded facts—including Plaintiff's allegations suggesting that the basis for his termination (the alleged harassment) was not legitimate because no harassment occurred, *see, e.g.*, [Doc. 11 at ¶¶ 9, 14]—in Plaintiff's favor.  *See Scribner v. Durango Coca-Cola Bottling Co.*, No. 23-cv-01263-NYW-KAS, 2023 WL 7003492, at *6 (D. Colo.

---

discrimination occurred in his case."  [Doc. 82 at 10].  However, the underlying investigation documents are not part of the record in this case and cannot be considered in ruling on the Motion to Dismiss or Plaintiff's objections.  *Jojola*, 55 F.3d at 494.

Oct. 24, 2023) (this Court rejecting an employer's argument that a former employee's ADEA claim should be dismissed because the employer could articulate a legitimate, non-discriminatory basis for the termination and explaining that "accepting this argument would require the Court to not only construe [the employee's] allegations and the reasonable inferences drawn therefrom in [the employer's] favor, but to also jump ahead to the second step in the burden-shifting evidentiary *McDonnell Douglas* framework").

This Court has previously recognized that "[a] number of courts in this District have held that allegations that the plaintiff was terminated and replaced by a younger employee are sufficient, at the pleading stage, to give rise to an inference of age discrimination." *Id.* at *5 (collecting cases).  Here, Plaintiff alleges slightly more:  he alleges that (1) he "is over 40 and is in the age category protected under the ADEA," [Doc. 11-1 at ¶ 27]; (2) his job performance was "excellent" and he had "received favorable performance reviews . . . throughout the five and a half years of his employment," [Doc. 11 at ¶ 2]; (3) he always performed all essential functions of his job and was qualified to perform all of the functions of his job, [Doc. 11-1 at ¶ 28]; (4) he was terminated from his employment, [Doc. 11 at ¶ 17]; and (5) he was replaced by someone younger than 40 years of age, [Doc. 11-1 at ¶ 30].  At this stage of the proceedings, and construing the allegations liberally and in Plaintiff's favor, the Court finds these allegations sufficient to state an ADEA claim "that is plausible on its face."  *Iqbal*, 556 U.S. at 678; *Scribner*, 2023 WL 7003492, at *6.  As a result, the Court respectfully declines to adopt Judge Neureiter's Recommendation insofar as it recommends dismissal of Plaintiff's ADEA claim and will therefore **SUSTAIN** Plaintiff's objection with respect to this claim.

II.     **The Motion for Summary Judgment**

In light of his conclusion that Plaintiff's claims should be dismissed, Judge Neureiter recommends that Plaintiff's Motion for Summary Judgment be denied.  [Doc. 77 at 23].  No Party has objected to this portion of the Recommendation.

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *Summers*, 927 F.2d at 1167; *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a [magistrate judge's] factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  The Court has reviewed this portion of the Recommendation to satisfy itself that there is "no clear error on the face of the record."[6]  Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.  The Court agrees with Judge Neureiter that the Motion for Summary Judgment should be denied, given that discovery has not yet commenced in this case and there is no basis to enter judgment in favor of any Party.  This portion of the Recommendation is therefore **ADOPTED**.

## CONCLUSION

For the above reasons, **IT IS ORDERED** that:

(1)     Plaintiff's objections [Doc. 81] are **SUSTAINED in part** and **OVERRULED in part**;

(2)     The Report and Recommendation on Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment [Doc. 77] is **ADOPTED in part**;

---

[6] This standard of review is something less than a "clearly erroneous or . . . contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review, Fed. R. Civ. P. 72(b).

(3)    Defendants' Motion to Dismiss [Doc. 37] is **GRANTED in part** and **DENIED in part**;

(4)    Plaintiff's claims against the Individual Defendants are **DISMISSED without prejudice**, and Defendants Mayorkas and Pekoske are **DISMISSED** from this case;

(5)    Plaintiff's due process claims are **DISMISSED without prejudice**;

(6)    Plaintiff's Motion for Summary Judgment [Doc. 64] is **DENIED**;

(7)    A copy of this Order shall be sent to:

Scott Thomas Warrington
1635 Foxfire Road
Bayfield, CO 81122

DATED:  September 20, 2024                    BY THE COURT:

Nina Y. Wang
United States District Judge